O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FRANCIS MASGULA, | ) Case No. EDCV 10-01981 (OP) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (ECF Nos. 8, 9.)

[2]  As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

## I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)   Whether the administrative law judge ("ALJ") properly considered the opinions of treating physicians; and

(2)   Whether the ALJ properly considered Plaintiff's subjective complaints and properly assessed Plaintiff's credibility.

(JS at 3.)

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

/ / /

2

# III.

## DISCUSSION

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of a mood disorder and an anxiety disorder.  (Administrative Record ("AR") at 11.)  The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:  non-public; and occasional non-intense interaction with co-workers and supervisors.  (Id. at 12.)

Relying on the testimony of a Vocational Expert ("VE"), the ALJ determined that Plaintiff was unable to perform his past relevant work of Healthcare Administrator (Dictionary of Occupational Titles ("DOT") No. 187.117-010), although he would have transferable computer skills from that work that could transfer to jobs in data entry.  (AR at 16.)  The ALJ also relied on the VE's testimony to determine that there were alternative occupations such as Linen Room Attendant, (DOT No. 222.387-030) Mail Clerk, (DOT No. 209.687-026), and Library Page (DOT No. 249.687-014) that exist in significant numbers in the national economy.  (AR at 17.)

**B.    The ALJ's Consideration of the Opinions of Plaintiff's Treating Physicians.**

Plaintiff contends that the ALJ failed to give specific reasons for rejecting the opinions of his treating physicians in favor of non-examining non-treating physicians.  (JS at 4.)  Specifically, Plaintiff contends that the ALJ failed to properly reject the opinions of his treating psychiatrist at the Department of Mental Health, who "found Plaintiff to have numerous symptoms and limitations and concluded . . . that Plaintiff was not capable of sustaining a 40 hour work week as a result of those multiple symptoms and limitations."  (Id. (citing AR at 257).)  He also claims the ALJ failed to consider the opinions of those mental

3

1   healthcare providers who assessed low global assessment of functioning ("GAF")

2   scores on at least two separate occasions.  (Id. at 6 (citing AR at 530, 546).)

3   Finally, he claims the ALJ ignored the opinion of Dr. Dorsey, who found certain

4   limitations with respect to lifting.  (Id. at 7-8 (citing AR at 247).)

5           1.     **Applicable Law.**

6           It is well-established in the Ninth Circuit that a treating physician's opinion

7   will be entitled to special weight, because a treating physician is employed to cure

8   and has a greater opportunity to know and observe the patient as an individual.

9   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating

10  physician's opinion is not, however, necessarily conclusive as to either a physical

11  condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,

12  751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on

13  whether it is supported by sufficient medical data and is consistent with other

14  evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating

15  physician's opinion is uncontroverted by another doctor, it may be rejected only

16  for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

17  1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating

18  physician's opinion is controverted, it may be rejected only if the ALJ makes

19  findings setting forth specific and legitimate reasons that are based on the

20  substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

21  2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th

22  Cir. 1987).

23          The Ninth Circuit also has held that "[t]he ALJ need not accept the

24  opinion of any physician, including a treating physician, if that opinion is brief,

25  conclusory, and inadequately supported by clinical findings."  Thomas, 278 F.3d

26  at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.

27  1992).  A treating or examining physician's opinion based on the plaintiff's own

28  complaints may be disregarded if the plaintiff's complaints have been properly

4

1   discounted.  <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 602 (9th Cir.

2   1999); <u>see also</u> <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997); <u>Andrews</u>

3   <u>v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).  Additionally, "[w]here the opinion

4   of the claimant's treating physician is contradicted, and the opinion of a

5   nontreating source is based on independent clinical findings that differ from those

6   of the treating physician, the opinion of the nontreating source may itself be

7   substantial evidence; it is then solely the province of the ALJ to resolve the

8   conflict."  <u>Andrews</u>, 53 F.3d at 1041; <u>Magallanes</u>, 881 F.2d at 751; <u>Miller v.</u>

9   <u>Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985).

10        **2.   <u>Analysis.</u>**

11             **a.     <u>Narrative Report from Riverside County Mental Health</u>**

12                      **<u>Department.</u>**

13        Plaintiff contends the ALJ completely disregarded a February 23, 2009,

14   one-page Narrative Report ("Report") from the Riverside County Mental Health

15   Department, without providing any significant or legitimate reasons for doing so.

16   (JS at 5 (citing AR at 15, 257).  The Court disagrees.

17        The Report, consisting of a series of criteria, with items to be circled if they

18   "apply to the case," noted that Plaintiff is diagnosed with Major Depressive

19   Disorder, N.O., with Psychotic Features.  (AR at 257.)  It reported auditory and

20   visual psychosis influencing actions or behavior; mildly impaired memory;

21   moderately impaired judgment; evidence of confusion, depression, anxiety,

22   suicidal/homicidal ideation, isolation, and inappropriate affect; with symptoms of

23   apathy, social withdrawal, and poor grooming.  (<u>Id.</u>)  The Report indicated an

24   inability to maintain a sustained level of concentration, sustain repetitive tasks for

25   an extended period, or adapt to new or stressful situations; and an anxious and

26   tearful attitude.  (<u>Id.</u>)  Finally, the Report stated that Petitioner could not complete

27   a forty-hour work week without decompensating, and his prognosis was "Very

28   Guarded."  (<u>Id.</u>)  A comment indicated that the physician "[a]ttempted to gather

1   collab[o]rative information from family members regarding patient's symptom
2   response to treatment with limited success.  Pt. presents guarded when approached
3   with above suggestion."  (Id.)

4   　　　　In his decision, the ALJ stated the following about the Report:
5   　　　　I have read and considered the one page check-list format statement of
6   　　　　disability dated February 23, 2009 and give it no weight.  The claimant
7   　　　　has no hospitalizations or emergency treatment other than the outpatient
8   　　　　treatment submitted.  The claimant did not start treatment until almost
9   　　　　two years after he alleged his disability began.   The very severe
10   　　　　symptoms reported in the check-list report are not reported anywhere in
11   　　　　the medical record.

12   (Id. at 15 (citations omitted).)

13   　　　　Consequently, the ALJ fully and properly considered this check-box type
14   Report from Riverside County Mental Health.  He specifically noted that the very
15   severe symptoms listed on the check-list report were not supported anywhere in
16   the medical records.  (Id.)  This is a specific and legitimate reason for discounting
17   the opinion of a treating physician.  Batson v. Comm'r, 359 F.3d 1190, 1191 (9th
18   Cir. 2004) (holding that the ALJ reasonably accorded a treating physician opinion
19   "minimal evidentiary weight" because "it was in the form of a checklist [and] did
20   not have supportive objective evidence"); see also Bray v. Comm'r of Soc. Sec.
21   Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (citing Thomas, 278 F.3d at 957)
22   ("The ALJ need not accept the opinion of any physician, including a treating
23   physician, that is brief, conclusory, and inadequately supported by the medical
24   record.").

25   　　　　Further, the ALJ reviewed numerous medical reports that were contrary to
26   this single medical source Report regarding Plaintiff's limitations.  For example,
27   in a December 17, 2007, treatment note, Plaintiff was noted to be neat, with
28   appropriate affect and speech, and no issues of self harm or harm to others.  (AR at

6

14.)  The ALJ noted that other treatment notes in exhibits 10F and 11F of the AR were mostly duplicate and repetitious of the same comments.  (Id.)  In short, the ALJ found nothing to support the one-page check-list assessment opining that Plaintiff exhibited suicidal/homicidal ideation, inappropriate affect, and an inability to complete a forty-hour work week without decompensating.  (Id. at 257.)  Other notes reflected Plaintiff frequently cancelled or was late to appointments, or failed to comply with treatment.  (Id. at 14.)  The ALJ characterized the subsequent treatment records as "benign" and "full of issues of noncompliance with treatment."  (Id. at 14-15); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings").

Based on the foregoing, the Court finds that The ALJ provided sufficiently specific and legitimate reasons for rejecting the conclusions set forth on this check-list Report.  Thus, there was no error.

### b.  GAF Scores.

Plaintiff contends the ALJ failed to provide specific and legitimate reasons for disregarding the opinions of those mental healthcare providers who assessed low GAF scores on at least two separate occasions.  (JS at 6 (citing AR at 530, 546).)  Specifically, on December 3, 2007, Plaintiff was assessed as having a GAF score of 50.  (AR at 530).)  On January 7, 2008, he was again assessed a GAF score of 50.  (Id. at 546).)  Plaintiff contends that these scores were consistent with the opinions of the treating source in the Report previously discussed and improperly discounted by the ALJ.

With regard to the GAF scores, the ALJ stated:

I give the GAF score of 50 no weight as reported by the clinician.[FN 1]  This score is based entirely on the subjective complaints of the claimant and as described above he has been found to

1  be only partially credible.  The GAF score is not consistent with the

2  overall picture of the claimant when reviewing his records.

3      [FN 1]  I find the [GAF] scores in the claimant's record are of

4  limited evidentiary value. These subjectively assessed scores reveal only

5  snapshots of impaired and improved behavior.  I give more weight to the

6  objective details and chronology of the record, which more accurately

7  describe the claimant's impairments and limitations.

8  (Id. at 15 (citation omitted).)

9  Plaintiff's GAF scores of 50 fail to establish that Plaintiff's impairment was

10 severe.[3]  As a threshold matter, the Commissioner has no obligation to credit or

11 even consider GAF scores in the disability determination.  See 65 Fed. Reg.

12 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . is the scale used in the

13 multiaxial evaluation system endorsed by the American Psychiatric Association.

14 It does not have a direct correlation to the severity requirements in our mental

15 disorders listings."); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241

16 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in

17 formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's

18 failure to reference the GAF score in the RFC, standing alone, does not make the

19 RFC inaccurate.").

20 Even if consideration of such scores was required, Plaintiff's scores are not

21 sufficiently low that they raise any serious question about the ALJ's determination

22 that Plaintiff's mental condition did not significantly limit his ability to work, or

23 his determination of limitations with respect to non-public work, and only

24

25

26 [3]    A GAF score of 50 falls at the upper end of the "serious symptom"
category, described as "(suicidal ideation, severe obsessional rituals, frequent
27 shoplifting) OR any serious impairment in social, occupational, or school
functioning (e.g., no friends, unable to keep a job)."  DSM-IV 34.  Scores of 51-60
28 fall into the "moderate symptom" category.

occasional non-intense interaction with co-workers and supervisors. As the ALJ stated, he gave Plaintiff "some benefit of [the] doubt" in assessing these limitations as they were not actually supported by the objective record, but only by Plaintiff's current subjective complaints. (AR at 13.) Moreover, each score was assessed as part of an *Initial* Psychiatric Assessment. (Id. at 530, 546 (emphasis added).) As such, they also were based entirely on Plaintiff's subjective complaints to the clinician, not on any treatment or treatment history at the facility. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject a treating physician's opinion if it is based to a large extent on plaintiff's self-reports that have been properly discounted as incredible).[4]

Based on the foregoing, the Court finds that the ALJ provided specific and legitimate reasons for discounting the GAF scores. Thus, there was no error.

### c.   Dr. Dorsey.

Plaintiff contends the ALJ ignored the opinion of Dr. Dorsey, a consultative examiner, who found certain limitations with respect to lifting. (JS at 7-8 (citing AR at 247).) Specifically, Plaintiff saw Dr. Dorsey, on April 3, 2007, and complained of left small, ring, and middle finger numbness, and an inability to extend the fingers of his right hand. (AR at 244.) He told Dr. Dorsey that although he is actively unable to extend the fingers, he has no problem passively extending the fingers with the other hand. (Id.) In his report, Dr. Dorsey diagnosed Plaintiff with "left thoracic outlet syndrome," and commented:

> The claimant is not showing any evidence of specific neurological compromise, either peripherally or centrally of the right upper extremity. All of the evidence points to a nonorganic cause of the claimant's right upper extremity complaints. With regard to the left upper extremity, he clearly has thoracic outlet syndrome. However, it should be noted that

---

[4] The ALJ's properly discounted credibility determination is discussed infra in Part III.C.

9

the claimant indicates that his left upper extremity symptoms have not been functionally limiting in the past. . . . [¶] The right upper extremity shows no objective findings which would indicate any limitation in manipulative activities. The left upper extremity gripping, grasping, feeling, and fingering activities could be done on a frequent but not continuous basis. There are no other limitations.

(Id. at 247-48.) Dr. Dorsey opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and "should be doing no overhead activities." (Id. at 248.)

With respect to Dr. Dorsey's report, the ALJ stated:

Although the clinical findings of the consultative examiner are given significant weight, the conclusions are not given any weight. The undersigned outright rejects the diagnosis and limitations noted by Dr. Dorsey. Except for motion problems with the right hand, the claimant's physical examination was completely normal. The claimant alleged he woke up with his right hand clenched and an inability to extend the fingers of the right hand. The claimant alleged treatment from his physician for this, but there are no records of treatment to support the claimant's allegation.[5] The claimant's ability to flex his fingers is within his control. The claimant did not testify to any of these

_____

5  This appears to be an inaccurate statement. The Court notes records of treatment dated from February 2006 to February 2007 relating to follow-up for his hands. Thus, it appears that Plaintiff at least sought treatment. (See AR at 214-18.) Indeed, the ALJ mentions those records elsewhere in his report. (Id. at 14 (citation omitted) ("The claimant was treated for symptoms of pain in his hands and wrists with a diagnosis of possible carpal tunnel syndrome from February 2006 through November 2006.").

symptoms at the hearing[6] and there are no medical records to support a diagnosis of left upper extremity problems.  The conclusions of Dr. Dorsey that the claimant has left thoracic outlet syndrome and voluntary dysfunction of the right upper extremity is not supported anywhere in the record including the findings from the Board certified neurological examiner.

(Id. at 15 (citations omitted).)

Although some of the ALJ's reasons for rejecting Dr. Dorsey's report appear inaccurate (see supra notes 5, 6), the Court finds that the ALJ nevertheless provided sufficient specific and legitimate reasons for discounting the findings of Dr. Dorsey.  Dr. Dorsey's comments regarding the cause of Plaintiff's right upper extremity complaints were speculative, and his diagnosis of thoracic outlet syndrome and resulting functional limitations, were not supported anywhere in the record.[7]  The ALJ also properly gave great weight to the report and diagnosis of

---

[6]  This is also an inaccurate statement.  On May 1, 2009, Plaintiff, unrepresented by counsel, did testify to the problem with his right hand at the first of the two hearings held.  (AR at 76-77.)  Of note, however, he also testified that he had recently been to a warehouse to sign up "just to do some lifting," thinking that "maybe it would be an isolated job, no people around and . . . they could give me a shovel and ask me to dig a hole somewhere."  (Id. at 69-70.)  At the first hearing, the ALJ determined to send Plaintiff for additional neurological and psychological evaluations and to schedule a second hearing, later held on September 21, 2009.  (Id. at 80-83.)  The consulting psychologist in his report also noted his surprise that Plaintiff appeared for his evaluation with soiled hands given his complaints of inability to work due to peripheral neuropathy.  (Id. at 225.)

[7]  During the second hearing, the ALJ and Plaintiff's attorney specifically discussed the diagnosis of thoracic outlet syndrome:

ATTY:  . . . You know, the first physical doctor that he saw made a statement that he definitely has a clear case of thoracic outlet

(continued...)

1   Dr. Sarah Maze, a Board certified consulting neurologist, who found "no

2   limitations" and only noted a history of right-sided weakness.[8]  (AR at 15 (citing

3   id. at 515-26).)  He noted that Dr. Maze's report was one of those that failed to

4   support Dr. Dorsey's diagnosis or functional limitations.  (Id.)  Plaintiff does not

5   dispute the ALJ's reliance on Dr. Maze's report.

6       Based on the foregoing, the Court finds no error in the ALJ's consideration

7   of Dr. Dorsey's opinion.

8   **C.    The ALJ's Consideration of Plaintiff's Subjective Complaints and**

9   **Plaintiff's Credibility.**

10      Plaintiff contends that the ALJ erred by failing to provide specific reasons

11  for discrediting Plaintiff's testimony regarding his subjective complaints.  (JS at

12  3.)  Specifically, he contends the ALJ minimized Plaintiff's mental limitations and

13  "[c]onsidering that the Plaintiff applied for benefits in February of 2007, and the

14  ALJ's decision was in November of 2009, it should not surprise anyone that this

15  Plaintiff may have had new impairments arise during the course of this terribly

16  _____

17      [7](...continued)

18      syndrome on the left and –
            ALJ:  Which he denied.

19          ATTY:  Which – yeah, and the doctor now is saying there's no

20      problem. . . .

21  (AR at 42.)  The Court has been unable to locate any evidence in the record that
    Dr. Dorsey later "denied" his original diagnosis.  If in fact he did, then Dr.

22  Dorsey's original opinion would be neither significant or probative.  Vincent v.

23  Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984 (ALJ need not discuss all
    evidence presented, but must explain why significant probative evidence has been

24  rejected).

25

26      [8] Dr. Maze reported that Plaintiff's level of cooperation during her
    neurological examination "appeared suboptimal."  (AR at 516.)  She noted that

27  although Plaintiff had been told he has peripheral neuropathy, "[h]is symptoms do
    not resemble peripheral neuropathy at all.  There is actually no functional

28  residual."  (Id. at 517.)

12

1  lengthy claims process."  (Id. at 14.)  He notes that he was sent for a psychological

2  consultative examination in March 2007, that his treatment records for mental

3  health date back to at least September of 2007, and that he consistently made

4  subjective statements regarding his mental health problems throughout the lengthy

5  claims process.  (Id. at 15 (citations omitted).)

6      **1.    Applicable Law.**

7      An ALJ's assessment of pain severity and claimant credibility is entitled to

8  "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.

9  Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a

10  claimant's testimony is a critical factor in a decision to deny benefits, the ALJ

11  must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231

12  (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also

13  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that

14  claimant was not credible is insufficient.)

15      An ALJ's credibility finding must be properly supported by the record and

16  sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily

17  reject a claimant's subjective testimony.  Bunnell v. Sullivan, 947 F.2d 341,

18  345-47 (9th Cir. 1991).  An ALJ may properly consider "testimony from

19  physicians . . .  concerning the nature, severity, and effect of the symptoms of

20  which [claimant] complains," and may properly rely on inconsistencies between

21  claimant's testimony and claimant's conduct and daily activities.  See, e.g.,

22  Thomas, 278 F.3d at 958-59 (citation omitted).  An ALJ also may consider "[t]he

23  nature, location, onset, duration, frequency, radiation, and intensity" of any pain or

24  other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage,

25  effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than

26  medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities";

27  "unexplained, or inadequately explained, failure to seek treatment or follow a

28  prescribed course of treatment"; and "ordinary techniques of credibility

evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. <u>Bunnell</u>, 947 F.2d at 346-47; <u>see also</u> Soc. Sec. Ruling 96-7p; 20 C.F.R. § 404.1529 (2005); <u>Morgan</u>, 169 F.3d at 600 (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication).

## 2.    **Analysis.**

The Court finds that the ALJ provided clear and convincing reasons for finding Plaintiff's subjective complaints less than credible.

First, he discussed the inconsistent claims made by Plaintiff regarding the basis for his disability:

> The claimant's main reason for not working was reported as problems using his right and left hand due to numbness and loss of dexterity. He said he could not do the work in medical management that he used to do. He also mentioned stress and anxiety, but these were not the main reasons he listed for not working. This is not consistent with his testimony, which was centered around psychiatric problems related to stress and anxiety.

(AR at 13.) The ALJ concluded that Plaintiff's "testimony and statements in the function report are not consistent and [this] only reduces his overall credibility further." (<u>Id.</u>) This is a clear and convincing reason for discounting Plaintiff's credibility. <u>Thomas</u>, 278 F.3d at 959 (the ALJ properly drew an adverse

14

1   credibility inference based on inconsistent statements).

2          Next, the ALJ found that although Plaintiff was "generally credible," the
3   record "simply does not support his allegations." (AR at 13.) He discussed the
4   fact that there was no evidence to support the extent of impairment alleged by
5   Plaintiff, including that both the psychological and neurological consultative
6   examiners found nothing wrong with Plaintiff. (Id.) He commented on the
7   consultative psychologist's report, which noted that Plaintiff's "quite soiled
8   hands" were surprising "because of his reported inability to work with [his]
9   hands." (Id. at 14 (citation omitted).) Again, these are clear and convincing
10  reasons for discounting credibility. Tidwell, 161 F.3d at 602; Batson, 359 F.3d at
11  1196 (the ALJ properly relied on objective findings and the physician's opinion to
12  discredit the claimant's testimony regarding functional limitations).

13         The ALJ also discussed Plaintiff's inconsistent treatment history and refusal
14  to go to any treatment other than his monthly outpatient visits, even to a doctor for
15  his high blood pressure; his lack of treatment for mental health issues until two
16  years after the alleged onset date; and the repeated reports of non-compliance with
17  treatment. (AR at 14.) He noted that most of the mental health treatment records
18  were "benign." (Id.) Again, this is a clear and convincing reason for discounting
19  credibility. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (an ALJ is
20  permitted to consider lack of treatment in his credibility determination); see also
21  Soc. Sec. Ruling 82-59 (when a disabling condition is amenable to treatment,
22  claimant must follow the course of treatment); Soc. Sec. Ruling 96-7p (an
23  individual may be less credible for failing to follow prescribed treatment without
24  cause); 20 C.F.R. § 416.930 (applicant must follow treatment.); Warre v. Comm'r
25  of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be
26  controlled effectively with medication are not disabling); Crane v. Shalala, 76 F.3d
27  251, 254 (9th Cir. 1996) (ALJ properly considered claimant's good response to
28  treatment).

1    Finally, the ALJ considered Plaintiff's function report in which he admitted
2    caring for himself, his wife, and his daughter; doing household chores and
3    cooking; and driving a car, grocery shopping, and going out to the library daily.
4    (AR at 13.)  The ALJ noted that Plaintiff's statements in the function report were
5    not consistent with his allegations of disabling problems and served to reduce his
6    overall credibility further.  (Id.)  This is also a clear and convincing reason for
7    discounting Plaintiff's credibility.  Burch, 400 F.3d at 681 (ALJ permissibly
8    considered evidence of claimant's ability to care for herself, cook, clean, and shop
9    in credibility analysis); Thomas, 278 F.3d at 959 (claimant's credibility was
10   properly rejected where, among other things, she could perform household chores
11   and shopping).

12       Based on the foregoing, the Court finds the ALJ's credibility finding was
13   supported by substantial evidence and was sufficiently specific to permit the Court
14   to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective
15   testimony.  Thus, there was no error.

16                                          **IV.**

17                                      **ORDER**

18       Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be
19   entered affirming the decision of the Commissioner of Social Security and
20   dismissing this action with prejudice.

22   Dated: October 11, 2011

23                                   HONORABLE OSWALD PARADA
                                     United States Magistrate Judge

16